| | | |
|---|---|---|
| AOC-E-105<br>Rev. 9-14<br>Commonwealth of Kentucky<br>Court of Justice   Courts.ky.gov<br>CR 4.02; Cr Official Form 1 | Sum Code: CI<br><br>**CIVIL SUMMONS** | Case #: **21-CI-02847**<br>Court:   **CIRCUIT**<br>County: **FAYETTE** |

*Plantiff*, ALLEN, KODEY J. VS. SRC OF LEXINGTON, INC., *Defendant*

TO:   SRC OF LEXINGTON, INC.
   LIRA JOHNSON ESQ.
   101 SOUTH FIFTH STREET, SUITE 2500
   LOUISVILLE, KY 40202

Telephone # : 502-540-2300     Email: LIRA.JOHNSON@DINSMORE.COM

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Vincent Riggs*
Fayette Circuit Clerk
Date: **9/20/2021**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____

Served By _____

Title _____

Summons ID: 387459126149900@00001006394
CIRCUIT: 21-CI-02847 Certified Mail
ALLEN, KODEY J. VS. SRC OF LEXINGTON, INC.



Page 1 of 1



This page was intentionally left blank

**COMMONWEALTH OF KENTUCKY**
**FAYETTE COUNTY CIRCUIT COURT**
**22nd JUDICIAL CIRCUIT**
**_____DIVISION**
**21-CI-_____**

KODEY J. ALLEN                                                                 PLAINTIFF,

v.

SRC OF LEXINGTON, INC.                                                         DEFENDANT.
      **SERVE:** Lira A. Johnson
              DINSMORE & SHOHL LLP
              101 South Fifth St., Ste. 2500
              Louisville, KY 40202
              502-540-2300
              Lira.johnson@dinsmore.com
              ***Counsel for Defendant***

---

## COMPLAINT

---

Plaintiff Kodey J. Allen ("Plaintiff"), states the following Complaint against Defendant SRC of Lexington, Inc. ("Defendant"):

### JURISDICTION AND VENUE

1. Plaintiff is a resident and domiciliary of the Commonwealth of Kentucky, residing within Fayette County, Kentucky.

2. Plaintiff's injury occurred in Kentucky and Kentucky has personal jurisdiction over Defendant as a Kentucky Corporation.

3. Defendant operated as a Kentucky Corporation during Plaintiff's tenure with Defendant.

4. Defendant's principal office is in Springfield, Missouri.

5. Venue is proper in Fayette County, Kentucky as the location of Plaintiff's injury pursuant to KRS 452.460.



6. The amount in controversy is in excess of seventy-five thousand dollars ($75,000), which exceeds the jurisdictional minimum amount of this Court.

## BACKGROUND

7. Plaintiff was directly employed with Defendant from April 27, 2018 to June 11, 2019 after working for Defendant through a staffing agency from January 2018 to April 26, 2018.

8. Defendant remanufactures large engines, hydraulics and power train components used in mining, construction, and power generation.

9. Plaintiff was employed with Defendant as a Technician.

10. Plaintiff is an African-American man.

11. During his tenure, Plaintiff complained to his direct supervisor, Daryl Nipper ("Nipper"), regarding a Confederate Flag that a coworker drew on the premises (also known as a "rebel flag").

12. The drawing of the Confederate Flag was accompanied by the phrase "A few more rednecks."

13. The employee who had depicted the flag was William "Tyler" Matthews ("Matthews").

14. Plaintiff made the above complaint on or about February 1, 2019.

15. During the above complaint, Plaintiff invoked the racially offensive nature of the Confederate Flag.

16. Subsequent to Plaintiff's complaint regarding the flag, Nipper sent Plaintiff a text message that read, "I'm looking into it, any idea who it might've been."

17. On February 12, 2019, Plaintiff signed a Performance Evaluation where only three (3) out of thirteen (13) categories were marked "needs improvement," with the rest

of the categories being marked "meets expectations." A supervisor also signed this performance evaluation.

18. Within two (2) weeks after the above complaint, Defendant changed Plaintiff's work schedule, moving him the weekend shift, where was forced to individually perform tasks for which he previously enjoyed the assistance of four (4) coworkers.

19. Plaintiff did not request the weekend shift.

20. Also working the weekend shift was another African-American man named Charles Green ("Mr. Green").

21. Defendant employed Mr. Green from around June of 2018 to around February of 2020.

22. Mr. Green chose to work on the weekends because he had a different job where he worked Monday through Thursday.

23. Mr. Green worked in the vicinity of Plaintiff, but the two men performed different tasks.

24. Both Plaintiff and Mr. Green were tasked with deconstructing or "tearing down" different parts.

25. Plaintiff was tasked with tearing down cylinder heads.

26. Mr. Green was tasked with tearing down bulldozer transmissions.

27. The tearing down process involved several steps.

28. These steps included sending the parts through the "hot tank" to clean off paint.

29. These steps also include buffing the parts to get them fully clean.

30. Tearing down is a time-consuming process.

31. The hot tank takes around an hour to finish one round of cleaning.

32. The hot tank can only fit seven (7) or eight (8) parts at a time on its crate.

33. All individuals on a given shift have to share the same hot tank.

34. Subsequent to Plaintiff's complaint to Nipper regarding the Confederate Flag, about a month or two before Plaintiff's termination, Nipper informed Plaintiff that [Plaintiff] had a bullet on his back.

35. Nipper made this remark in the vicinity of Mr. Green.

36. Nipper once asked Mr. Green if he (Mr. Green) suffered from Dementia.

37. On or about June 7, 2019, Plaintiff received a "last chance agreement" from Defendant, accusing Plaintiff of "low efficiency."

38. Defendant's policy handbook, at least the version in effect on June of 2019, says nothing about efficiency rates or expectations thereof.

39. On June 7, 2019, Plaintiff's Team Leader, Arthur Austin ("Austin"), administered to Plaintiff a breathalyzer test.

40. Austin was friends or at least good acquaintances with Matthews.

41. The breathalyzer test indicated that Plaintiff had a blood alcohol content (BAC) of 0.06 and upon re-administration, 0.055.

42. Prior to the administration of the breathalyzer test, Plaintiff had not caused any accidents or injuries to himself or anyone else on June 7, 2019.

43. The legal limit for driving in Kentucky is a BAC of 0.08.

44. Plaintiff tried to explain that his BAC was a false positive and/or that it was positive because he had had drinks the night before.

45. Alcohol can be reflected on a breathalyzer test for up to twenty-four (24) hours after drinking.[1]

---

[1] https://vertavahealth.com/blog/blood-alcohol-level-detection-time/

Page 4 of 8

46. On June 7, 2019, Plaintiff was suspended.

47. On June 11, 2019, Plaintiff was terminated via a phone call from Human Resources Director, Natasha Humphreys ("Humphreys").

48. Plaintiff tried to explain to Humphreys that it was a false positive and that he had consumed multiple protein bars for lunch, which in addition to drinking the night before, can register on a breathalyzer test, but Humphreys would not listen and proceeded with the termination.

### COUNT ONE: DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* AND THE KENTUCKY CIVIL RIGHTS ACT ("KCRA"), KRS 344.010 *et seq.*

49. Plaintiff adopts by reference all preceding and subsequent averments.

50. Plaintiff is an African American man.

51. Defendant terminated Plaintiff despite him meeting expectations on all but three (3) out of thirteen (13) categories in his 2019 performance evaluation.

52. Defendant terminated Plaintiff after Plaintiff registered a 0.06 and then 0.055 BAC on a breathalyzer test.

53. Prior to Plaintiff's termination, Defendant had not immediately (i.e., within the same day or week) terminated Caucasian employees that were visibly impaired by alcohol in the workplace or whose breath smelled like alcohol in the workplace.

54. Prior to Plaintiff's termination, Defendant had not immediately (i.e., within the same day or week) terminated Caucasian employees whose breathalyzer test revealed any amount of alcohol.

55. Defendant has employed one or more Caucasian or non-African-American employees whom it did not terminate for at least one (1) month following Defendant's reasonable suspicion that one or several of such employees were



intoxicated in the workplace, smelled of alcohol in the workplace, and/or registered any amount of alcohol on a breathalyzer test.

56. There was a Caucasian employee named Johnny, who appeared impaired at work on at least one occasion, but who kept his job for at least a month after appearing impaired.

57. Defendant chose not to administer a breathalyzer test on Johnny.

58. Defendant did administer a breathalyzer test on Johnny and it reflected a BAC over 0.00.

59. By terminating Plaintiff but not his Caucasian counterparts such as Johnny, and for terminating Plaintiff despite his meeting expectations in all but three (3) categories of his 2019 performance review, Defendant engaged in disparate treatment towards Plaintiff with regard to his race (African-American).

60. Racially disparate treatment violates Title VII and the KCRA.

61. For violation of the KCRA, Defendant is liable to Plaintiff for compensatory damages, front pay, back pay, attorney's fees, and any other applicable type of damages.

62. For violation of Title VII, Defendant is liable to Plaintiff for punitive damages.

**COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* AND THE KENTUCKY CIVIL RIGHTS ACT ("KCRA"), KRS 344.010 *et seq.***

63. Plaintiff adopts by reference all preceding and subsequent averments.

64. On or about February 1, 2019, Plaintiff complained to his supervisor, Nipper, regarding a Confederate Flag drawn in the workplace.

65. On the same day, Nipper sent Plaintiff a text message asking, "I'm looking into it, any idea who it might've been."

66. On February 12, 2019, Plaintiff signed a performance evaluation where only three (3) out of thirteen (13) categories were marked "needs improvement," with the rest of the categories being marked "meets expectations." A supervisor also signed this performance evaluation.

67. Subsequent to Plaintiff's complaint to Nipper, Plaintiff's work schedule was transferred to the weekend shift.

68. Subsequent to Plaintiff's complaint to Nipper, Plaintiff was issued a "last chance agreement."

69. For violation of the KCRA, Defendant is liable to Plaintiff for compensatory damages, front pay, back pay, attorney's fees, and any other applicable type of damages.

70. For violation of Title VII, Defendant is liable to Plaintiff for punitive damages.

**WHEREFORE,** Plaintiff respectfully requests that this Court award:

    A. Judgment against Defendant, including compensatory damages, punitive damages, liquidated damages, prejudgment interest, front pay, and backpay, in excess of the minimum jurisdictional amount of this Court, in an amount to be proven at trial;

    B. Trial by jury;

    C. Plaintiff's costs herein expended including an award of reasonable attorney's fees; and

    D. Such other relief to which he may be entitled.



Respectfully Submitted,

MEYMAN LAW PLLC

\s\ H. Gera Meyman, Esq.
P.O. Box 54693
Lexington, KY 40555
Telephone: 859-600-6529
Email:gera@meymanlaw.com
**ATTORNEY FOR PLAINTIFF**

Filed          21-CI-02847     10/04/2021         Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
10/11/2021 12:55:44 PM
88910-35

**UNITED STATES POSTAL SERVICE**

Date Produced: 10/04/2021

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8349 7594 38. Our records indicate that this item was delivered on 09/27/2021 at 07:49 a.m. in LOUISVILLE, KY 40201. The scanned image of the recipient information is provided below.

Signature of Recipient : 

Address of Recipient : 

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:    C2949709.16945901

Filed          21-CI-02847     10/04/2021         Vincent Riggs, Fayette Circuit Clerk

AOS : 000001 of 000001